Filed 11/17/25  P. v. Hollis CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101377 |
| Plaintiff and Respondent, | (Super. Ct. No. 01F05427) |
| v. | |
| ELLIS CLAY HOLLIS, | |
| Defendant and Appellant. | |

In 2002, a jury convicted defendant Ellis Clay Hollis of 12 felonies, including seven counts of forcible rape. The trial court sentenced defendant to 50 years to life, plus 258 years. In 2022, defendant was resentenced under Penal Code[1] section 1172.75 and the trial court struck seven years of his determinate term. Defendant appeals, contending the trial court abused its discretion under section 1385 when declining to further reduce

---

[1] Further undesignated section references are to the Penal Code.

1

defendant's sentence because the court found he currently posed a danger to public safety. We agree and accordingly vacate defendant's sentence and remand for a full resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

In 2002, defendant was sentenced as a second strike offender to 50 years to life plus 258 years, based on: one count of forcible rape for 50 years to life, plus 10 years for a deadly weapon enhancement; one count of first degree robbery for six years, plus one year for a deadly weapon enhancement; six more counts of forcible rape for 16 years each, plus 10 years for deadly weapon enhancements on each count; three counts of oral copulation by force for 16 years each, plus 10 years for deadly weapon enhancements on each count; one five-year prior conviction enhancement; and two one-year prior prison term enhancements. All sentences were the upper term and ran consecutively.[2] Defendant was also convicted of residential burglary but the trial court imposed and stayed that six-year sentence.

In 2022, defendant requested resentencing under Senate Bill No. 483 (2021-2022 Reg. Sess.) (Senate Bill 483) (Stats. 2021, ch. 728, § 3), codified as section 1172.75, to strike his two one-year prior prison term enhancements. In further briefing, defendant argued he is entitled to a full resentencing where he could benefit from other changes in the law, including under section 1385 to dismiss his 10, 10-year deadly weapon enhancements and one five-year prior conviction enhancement because, given his "extraordinary transformation, it is clear dismissing the numerous enhancements in

---

[2]     The People contend our prior opinion for defendant's initial appeal erroneously stated defendant's full sentence as 50 years to life, plus 248 years. (See *People v. Hollis* (Sept. 9, 2003, C041976) [nonpub. opn.].) We agree. This calculation seemingly did not include the additional 10-year determinate sentence for the weapon enhancement attached to the 50-year-to-life indeterminate sentence, bringing defendant's total determinate sentence to 258 years, not 248 years.

[defendant's] case would not 'endanger public safety.' " Defendant also requested the trial court strike his strike, impose the middle term throughout, and run his sentences concurrently.

The trial court held a resentencing hearing on June 7, 2024. After counsels' arguments, the trial court began by acknowledging what defendant "has been able to achieve while he's been incarcerated," including defendant recognizing what led to his criminal behavior, defendant taking many classes in prison, and defendant having "the respect and support of several [prison] staff members." But the court expressed concerns about some prison write ups involving alcohol because defendant's convictions "stem from alcohol and drug abuse," so though defendant "is on the road to recovery, he has not recovered, at least not fully." The trial court then detailed the violent circumstances of defendant's crimes in 2001 and the impact on the victim, as well as defendant's prior criminal record.

The court concluded: "[W]hen I look at the facts and circumstances of this case, it is chilling, and his record is problematic. And then when I look at if he had been absolutely incident free from 2001 to today's date with all these rehabilitative efforts, I could see myself perhaps making a different decision. But in my opinion he still falls within the spirit of the three strikes law, and I do believe that he still poses an unreasonable risk for release." The trial court found the five-year prior conviction enhancement was "double dipping," so it struck that enhancement along with the two one-year prior prison term enhancements Senate Bill 483 required be stricken. Finally, the court found, "[T]he 50 to life will stand. This [c]ourt feels [defendant] is still within the spirit of the three strikes law."

Defendant appeals.

## DISCUSSION

Defendant contends the trial court applied the wrong standard when deciding whether to strike his weapon enhancements. Defendant states, "[T]he trial court's

3

endangerment finding was an abuse of discretion because it considered whether [defendant] was suitable for immediate release rather than whether dismissal of the weapon enhancements, in light of his remaining sentence, would endanger public safety." The People disagree, arguing, "The presumption is that the trial court used the correct legal standard, and [defendant] fails to rebut that presumption." We conclude defendant's argument is more persuasive and vacate his sentence.

Section 1385, subdivision (c)(1) states, in relevant part, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Section 1385, subdivision (c)(2) provides: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

We review the trial court's decision not to strike an enhancement under section 1385 for an abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) "An abuse of discretion occurs when the trial court, for example, is unaware of its discretion, fails to consider a relevant factor that deserves significant weight, gives significant weight to an irrelevant or impermissible factor, or makes a decision so arbitrary or irrational that no reasonable person could agree with it." (*In re White* (2020) 9 Cal.5th 455, 470.)

There is no disagreement at least one section 1385 mitigating circumstance is applicable here: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) Since at least one mitigating factor was applicable, that factor would

4

have weighed greatly in favor of dismissing the enhancement if the trial court did not find "dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)

Defendant contends the trial court's endangerment analysis was an abuse of discretion because "even if the trial court dismissed all the weapon enhancements, 57-year-old [defendant] would continue to serve a sentence of 50 years to life plus 150 years . . . . Thus, there is no likelihood that physical injury or other serious danger to the public would result *because of the dismissal*." Though we make no determination of the likelihood of physical injury, we agree the trial court should have considered the effect of dismissing the enhancements on the likelihood of physical injury to others at the time of defendant's potential future release.

Another appellate court addressed this issue in *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*). The defendant there requested enhancements be stricken under section 1385, but the parties and the trial court were uncertain how to assess whether the defendant would be a danger to society—either at the time of resentencing or when the defendant could be released. (*Id*. at pp. 222-224.) The trial court ultimately decided it thought the analysis was " 'forward looking from today, not forward looking from 50 years from now' " so it declined to lessen the defendant's sentence because it believed "presently [the defendant] d[id] represent a danger to society." (*Id*. at p. 224.)

The appellate court found the trial court abused its discretion because "[t]he plain words of [section 1385] do not support the trial court's singular focus on whether the defendant *currently* poses a danger" and instead "focuses on the danger associated with the dismissal of an enhancement." (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 220, 228.) The court explained: "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence. A currently

dangerous defendant who will be released from prison within a short time frame might be found by the trial court to pose a greater danger to the public than a defendant who is currently dangerous but who has no prospect of release from prison until [the defendant] is elderly." (*Id*. at p. 228.) This analysis should also consider the "safety valve" of a future Board of Parole Hearings review before a defendant "serving a lengthy indeterminate sentence" can be released. (*Ibid*.)

The court in *Gonzalez* found support in our opinion in *People v. Williams* (2018) 19 Cal.App.5th 1057. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 228-229.) In finding an abuse of discretion under the Three Strikes Reform Act of 2012, a different panel of this court concluded in *Williams* that "[d]etermining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. When determining whether resentencing poses an unreasonable risk of danger, the trial court must look to when a defendant would be released if the petition is granted and the defendant is resentenced. A defendant who would obtain immediate release if the petition is granted poses a different potential danger to society than a defendant who could be released only in his or her [or their] 70's." (*Williams*, at p. 1063; *id*. at pp. 1059, 1064.) Thus, the appellate court in *Gonzalez* found, "[T]he trial court erred because it considered only whether [the defendant] *currently* posed a danger to the public when assessing if a dismissal of the firearm enhancement would 'endanger public safety.' " (*Gonzalez*, at p. 231.)

The *Gonzalez* court also found the error prejudicial because there was "no clear indication in the record that the trial court would have declined to dismiss the firearm enhancement if, rather than limiting its inquiry to [the defendant's] current dangerousness, it had analyzed whether public safety would be endangered by the sentence of 50 years to life that would result from dismissing the firearm enhancement." (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 231.)

6

We find *Gonzalez* persuasive and apply its reasoning here to conclude there was an abuse of discretion. As analyzed in *Gonzalez*, with the support of *Williams*, section 1385's focus on the dismissal of the enhancement as the basis for the endangerment analysis requires courts to look, at least in part, to when defendant may be released to inform the public endangerment analysis. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 229 ["requires the trial court to consider, among other things, the date on which the defendant would be released"].) Even if the trial court dismissed the weapon enhancements entirely, defendant would still be serving an indeterminate sentence in addition to the remaining determinate term. The trial court did not consider any of the options before it as part of its analysis and the impact the various sentencing options would have on defendant's future dangerousness. Most telling is the trial court's comment that it believed defendant "still poses an unreasonable risk *for release*." (Italics added.) Defendant was not requesting an immediate release, nor was release a possibility given his indeterminate sentence. Defendant's release requires a hearing before the Board of Parole Hearings, which would first conduct a dangerousness analysis, something also not considered by the trial court. (§ 3041; Cal. Code Regs., tit. 15, § 2281; *Gonzalez*, at p. 229 [§ 1385 "requires the trial court to consider . . . in the case of an indeterminate sentence, the safety valve that exists due to the review by the Board of Parole Hearings"].)

The trial court instead focused on defendant's present dangerousness, contrary to the People's argument. Even though the trial court did not use the words *present danger*, it is clear from its analysis the trial court considered only present and past dangerousness. This included consideration of defendant's 2001 crime, his prior criminal history, and his behavior in prison to determine defendant was a current danger to public safety. These are appropriate considerations, especially given the violent and callous nature of defendant's crimes, but they are incomplete by themselves. Thus, we are convinced the trial court based its decision on an incorrect legal standard. (*Gonzalez*, *supra*,

7

103 Cal.App.5th at p. 225 [" 'an abuse of discretion arises if the trial court based its decision on impermissible factors . . . or on an incorrect legal standard' "].)

This error was also prejudicial because we find no clear indication in the record the trial court would have declined to further reduce defendant's sentence of 50 years to life plus 251 years if it applied the proper analysis. (*Gonzalez*, *supra*, 103 Cal.App.5th at p. 231 ["we find no clear indication in the record that the trial court would have declined to dismiss the firearm enhancement if" it had performed the correct analysis].) To the contrary, the court was equivocal, stating it "could see [itself] perhaps making a different decision" without the prison write ups. If the trial court had used the correct standard to assess *future* dangerousness, there is no indication in the record how defendant's prison write ups would have weighed in the trial court's analysis.

The People argue the error was harmless "[b]ecause the trial court made an alternate finding that dismissal of the weapon use enhancements would not be in furtherance of justice," thus the "record clearly indicates that, on remand, the court would find—like it did previously—that the interests of justice would not be served by striking the weapons use enhancements." We disagree because the furtherance of justice finding was not an alternate finding. There is at least one applicable mitigating factor so whether dismissal of defendant's enhancements is in the furtherance of justice depends, at least in part, on whether dismissal would endanger public safety. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 230-231.) The trial court's incomplete public safety analysis rendered the overarching furtherance of justice analysis an abuse of discretion. The People are consequently asking us to rely on the trial court's flawed analysis to presume the trial court would reach the same conclusion performing the correct analysis on remand; we decline the invitation. Instead, like *Gonzalez*, "[t]he trial court gave no indication of how it would rule if it did not limit its inquiry to [defendant]'s current dangerousness. Indeed, because a sentence of [at least] 50 years to life would result in a potential release from prison far into the future when [defendant] is elderly, and because

8

a review by the Board of Parole Hearings and the Governor will take place before [defendant] is released, it is conceivable that, if the trial court holds a new sentencing hearing in which it does not limit its inquiry to [defendant]'s current dangerousness, it will decide to exercise its discretion under section 1385, subdivision (c)(2) in a different manner." (*Gonzalez*, at p. 231.)

We consequently vacate defendant's sentence and remand. On remand, the trial court shall determine whether dismissal of any enhancements would endanger public safety. In making that determination, the trial court shall consider when defendant could be released if the enhancements are dismissed and whether that release is contingent on future considerations of public safety. (*Gonzalez*, *supra*, 103 Cal.App.5th at pp. 228-229; *People v. Williams*, *supra*, 19 Cal.App.5th at p. 1064.) If it does not find there is a likelihood the dismissal of an enhancement would result in physical injury or other serious danger to others, the court shall then perform the remaining analysis under section 1385, subdivision (c)(2).[3]

---

[3] Defendant also challenges the reimposition of the upper term on his convictions' sentences. This issue is moot because we are remanding. On remand, defendant may raise any sentencing arguments available to him. (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate' "].)

DISPOSITION

Defendant's sentence is vacated and the matter is remanded for a full resentencing conducted in accordance with this opinion and current law.  In all other respects, the judgment is affirmed.


/s/
ROBIE, Acting P. J.


We concur:


/s/
MAURO, J.


/s/
KRAUSE, J.